## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MARI ESTELA PADRO OCTAVIANI,**

Plaintiff,

v.

**GLAXOSMITHKLINE CONSUMER HEALTHCARE,**

Defendants.

**Civil No. 14-1900 (DRD)**

### OPINION AND ORDER

Mari Estela Padro Octaviani ("Plaintiff") brought an action against her employer GlaxoSmithKline Consumer Healthcare ("GSK"). Plaintiff alleges that she was unjustly dismissed by GSK pursuant to 29 P.R. Laws § 185a ("Law 80"). *See* Docket No. 6-1(certified translation of complaint). Plaintiff additionally asserts that she was terminated illegally because of her age and in retaliation for her submission of a statement. The statement was submitted at the request of her employer and contained her version of facts of the events that transcribed on December 28, 2013. *See* 29 P.R. Laws § 146 ("Law 100"); *see also* 29 P.R. Laws. § 194 ("Law 115"); *see also* Docket No. 6-1. Furthermore, Plaintiff claims she is entitled to payment of accumulated unpaid vacation days and a bonus. *See* 29 P.R. Laws § 185a. Pending before the Court is GSK's *Motion for Summary Judgment. See* Docket No. 39. The Court shall address only the unjust termination claim under Law 80 as Plaintiff has moved to dismiss all other claims with prejudice. *See* Docket No. 48, p. 20.  For the reasons set forth below, the Defendants' motion is hereby **GRANTED**.

## I.    FACTUAL HISTORY

On September 11, 1989, Plaintiff began her tenure at GSK. Plaintiff worked at GSK for a period of 25 years in which she held various positions and received several promotions, which included increases in responsibilities and compensation. Plaintiff's highest annual salary was $104,800.00. On October 1, 2014, Plaintiff was terminated. Plaintiff at the dismissal held the position of Brand Manager. *See* Docket No. 6-1.

Plaintiff was provided a company car, which was conditioned on Plaintiff attending the GSK Fleet Management North America Safe Driver Program ("Safe Driver Program") and complying with the Alcohol and Drug Use Policy. As part of the Safe Driver Program, all fleet drivers are obligated to inform their managers and human resources of any arrest, citation, pending litigation, or conviction related to alcohol. *See* Docket No. 42-3, p.53; *see also* Docket No. 40. Additionally, they are to immediately inform said personnel of a suspended, restricted, or revoked driver's license. *See Id.* Notifications are to be made prior to determination as to the outcome of innocence or guilt; hence, employees are expressly prohibited from taking a "wait and see" approach.

On December 28, 2013, Plaintiff was pulled over for speeding and cited for driving under the influence of alcohol ("DUI"). *See* Docket No. 31. The incident occurred outside of working hours while the Plaintiff was on vacation. *See* Docket No. 6-1. Plaintiff did not report the incident to her manager, fleet manager, nor human resources. *See* Docket No. 40.

While not material to the controversy at hand, it should be noted that Plaintiff and GSK disagree as to whether Plaintiff was convicted or cleared of the DUI charge. Both parties do however agree that a set of conditions were placed on Plaintiff as a result of

2

the judicial process against her. The local court proceedings took place on February 13, 2014, followed by April 29, 2014, and April 30, 2014. A restricted provisional driver's license was granted for use from 8:00 a.m. to 8:00 p.m. for a period of 45 days. *See* Docket No. 33-16, p. 576. Plaintiff again failed to inform her managers or human resources of her restricted license.

On September 17, 2014, GSK discovered the DUI when they obtained Plaintiff's motor vehicle record as part of the Safe Driver Program procedures. On September 22, 2014, the employer informed Plaintiff of their discovery of the DUI. At this point, which was nine months after the DUI citation, Plaintiff provided a letter that stated her version of the events. In her letter submitted to Evelyn Roberts, the GSK manager of North American fleet safety and Plaintiff's supervisor, Plaintiff finally explained that she had a restricted license as a result of the DUI arrest. Plaintiff made no mention whatsoever of her previous failure to report the DUI, the subsequent court proceedings, or the license restriction. *See* Docket No. 33-16, p. 576-577. Plaintiff acknowledged she was aware of and had read again the company rules in relation to company car usage including the Safe Driver Program, and had completed the "Driving Impaired- Not Worth the Risk" online fleet training. *See* Docket No. 33-16, p.577. On October 1, 2014, GSK terminated Plaintiff following an internal investigation that found she had committed multiple policy violations by failing to report: the DUI arrest (December 28, 2013), the resulting court proceedings (February 13, 2014, April 29, 2014, and April 30, 2014), and the license restriction for forty five days as required by company policy. *See* Docket. No 31; *see also* Docket No. 33-16. The instant case followed.

3

## II. PROCEDURAL HISTORY

On November 20, 2014, Plaintiff filed a complaint against GSK in the Commonwealth of Puerto Rico Court of First Instance, San Juan Superior Court. *See* Docket No. 6-1. Plaintiff then alleged that she was unjustly dismissed in violation of Law 80 and is also entitled to payment of accumulated unpaid vacation days and a bonus under the aforementioned statute. Plaintiff additionally contends she was the victim of age discrimination in violation of Law 100, and subject to retaliation for the statement in violation of Law 115.

On December 15, 2014, GSK removed the case to federal court on diversity jurisdiction grounds. *See* Docket. No. 1; *see also* 28 USC § 1332(a). No challenge was filed by any party to the Court having jurisdiction under diversity. On March 23, 2016, GSK filed a *Motion for Summary Judgment* on the basis that Plaintiff had been terminated with good cause. *See* Docket. No. 39. In response, Plaintiff moved to voluntarily dismiss all of her claims with prejudice except for the wrongful termination claim under Law 80. With respect to the sole remaining claim, Plaintiff maintains that GSK has failed to meet the evidentiary burden to prevail on summary judgement with its good cause argument. Furthermore, Plaintiff upholds that language present in the policy was ambiguous, that GSK was not prudent in their determination to terminate, and that GSK fostered a culture in which driving while intoxicated was acceptable. *See* Docket. No. 47.

## III. SUMMARY JUDGEMENT STANDARD

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *See Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013); *Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008) (citing *Thompson v. Coca–Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986); *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).  The analysis with respect to whether or not a "genuine" issue exists is directly related to the burden of proof that a nonmovant would have in trial.  "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  *Liberty Lobby, Inc.*, 477 U.S. at 255.  (applying the summary judgment standard while taking into account a higher burden of proof for cases of defamation against a public figure).  In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law."  *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–661 (1st Cir. 2000) (citing *Liberty Lobby, Inc.*, 477 U.S. at 247–248); and *Prescott*, 538 F.3d at 40 (1st Cir. 2008) (citing *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (citing the Rule 56(e) advisory committee note to the 1963 Amendment).  The moving party must demonstrate the absence of a genuine issue as to any outcome determinative fact on the record.  *Shalala*, 124 F.3d at 306.  Once the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could

5

reasonably find in his favor. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The nonmovant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. *Maldonado–Denis v. Castillo Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990); *see also Suarez v. Pueblo Int'l.*, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a nonmovant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 247–248. Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1996); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

"We 'draw all reasonable inferences in the light most favorable to the nonmovant.' We will not, however, 'draw *unreasonable* inferences or credit bald assertions, empty conclusions, [or] rank conjecture.'" *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 32 (1st Cir. 2010) (emphasis in original) (citing *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)); *see also Smith v. Jenkins*, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating *Shafmaster v. United States*, 707 F.3d 130, 135 (1st Cir. 2013)). The Court must review the record as a whole and refrain from engaging in the assessment of any credibility or determine the weight of the evidence presented. *Reeves v. Sanderson*

*Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Liberty Lobby*, 477 U.S. at 255; *see also Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014). "Generally speaking, a party cannot raise a genuine dispute merely 'by relying on the hope that the jury will not trust the credibility of the witness,' but must instead present 'some affirmative evidence' on the point, except perhaps where the testimony is 'inherently unbelievable.'" *Nunes v. Massachusetts Dep't of Correction*, 766 F.3d 136, 142 (1st Cir. 2014) (citing *McGrath v. Tavares*, 757 F.3d 20, 28 n. 13 (1st Cir. 2014)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150 (quoting Anderson, 477 U.S. at 250–51).

## IV. ANALYSIS

In asserting her claim of unjust dismissal, Plaintiff maintains that GSK lacked good cause to terminate under Law 80. Moreover, Plaintiff contends that the consequences of violating GSK's company policy were not clear. Plaintiff points to the language of said violation, specifically the usage of the phrase "may result in termination" as opposed to "will result in termination." Further, Plaintiff alleges GSK's decision to terminate came as a result of poor analysis and insufficient consideration. Plaintiff, in addition, claims that GSK fostered a culture in which driving while intoxicated was "accepted," thus making her termination for said conduct inappropriate. The Court will address each of the aforementioned in seriatim fashion.

### A. Good Cause to Terminate

#### i. Pause for Good Cause

Plaintiff argues that she was terminated without good cause. Under Law 80, good cause for termination can be established when:

7

(a) the worker indulges in a pattern of improper or disorderly conduct, (b) the attitude of the employee of not performing his work in an efficient manner, or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment, [or] (c) **the employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee**. . . . (emphasis ours).

*See* 29 P.R. Laws § 185b. Terminations may not be "made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment." *Fernadez v. NCE Foods, Inc.*, 405 F.Supp.2d 179, 192 (D.P.R. 2005) (citing 29 P.R. Laws § 185b*).*

The courts have determined that Law 80 does not "invariably require repeated violations, particularly where an initial offense is so serious, or reflects upon the employee's character, that the employer reasonably should not be expected to await further occurrences." *Id.* at 192 (citing *Delgado Zayas v. Hosp. Interamericano de Medicina Avanzada*, 137 D.P.R. 643, 650, (1994); 1994 P.R. –Eng. 908 (Westlaw certified translation)). Furthermore "the act does not intend to be, nor should it be, a code of conduct containing a list of clearly defined offenses with their corresponding penalties for each case, whether it be a reprimand, suspension, or dismissal. This is the option of the employer who may adopt the reasonable rules and regulations [they deem] necessary for the good operation of the enterprise." *Srio. Del Trabajo v. I.T.T.*, 108 D.P.R. 536, 542; 8 P.R. Offic. Trans. 564, 568 (1979).

A singular violation of internal procedures has been found to constitute good cause when said violation is found to affect the safety or normal operation of the establishment. *See Vargas v. Royal Bank of Canada*, 604 F.Supp. 1036 (1985). "We reiterate that Act 80 allows for an employee's discharge for a single offense provided that the

circumstances of the case do not reflect arbitrariness or whim of the employer." *Delgado Zayas v. Hosp. Interamericano de Medicina Avanzada*, 137 D.P.R. 643, 650 (1994).

### ii.   Good Cause Analysis

Whether Plaintiff's actions constituted a singular violation or repeated violations is crucial in resolving the controversy at hand. Plaintiff addresses the failure to report as a singular violation, while GSK asserts that the Plaintiff's continuing failure to report is a repeated violation of company policy. Company policy requires that employees report any arrest, citation, pending litigation, or conviction related to alcohol within 48 hours of the occurrence. Pursuant to the policy, Plaintiff was obligated to individually report to both managers and human resources: (1) the initial arrest on December 28, 2014, (2) the judicial proceedings on February 13, 2014, April 29, 2014, as well as April 30, 2014, and (3) the provisional driver's license limiting use from 8:00am to 8:00pm. At best, Plaintiff's initial failure to report the DUI arrest constitutes a singular initial violation.[1] Said violation alone would not generally be sufficient grounds for termination under Law 80. However, Plaintiff again violated the company policy by failing to report the corresponding DUI court proceedings, and yet again when failing to report her subsequent license restrictions. As such, Plaintiff's actions constitute repeated violations of the reasonable rules and regulations established for the operation of the establishment, which by definition constitutes good cause for termination. *See* 29 P.R. Laws § 185b(c) ("Good cause… shall be understood to be… the employee's repeated violations of the reasonable rules and regulations. . . ."). Due to the Court's finding that Plaintiff's actions constitute repeated violations of the company policy, the Court need not address whether any of these

---

[1] Arguably, not reporting the initial arrest to either of her managers or human resources could already be considered more than one violation of company policy.

violations adversely affected the safety of the establishment, interfered with normal operation of company business, or involved dishonest behavior.[2]

GSK upholds that Plaintiff received multiple trainings and was well aware of the policy that she was obliged to follow (a fact which Plaintiff does not contest), yet she undoubtedly failed to comply with the policy on multiple occasions. *See* Docket No. 31 p. 7. Additionally, as GSK provided company vehicles to various employees (including Plaintiff), a policy requiring employees to report any arrest, citation, pending litigation, or conviction related to alcohol within 48 hours is reasonable. While Plaintiff may have had an exemplary record up to that point, she engaged in a series of policy violations. Regardless of prior good standing, such behavior does constitute good cause to terminate under the law. *See Fernandez v. NCE Food, Inc.*, 405 F.Supp. 2d 179, 181 (D.P.R. 2005) ("Courts have found good cause for termination exists where an employee violated an employer's internal procedures, and where an employee failed to follow rules and supervisory instructions."); *see also Rosado v. Am. Airlines*, 743 F. Supp. 2d 40, 55 (D.P.R. 2010) (employer was granted summary judgment as the court found the plaintiffs lack of compliance with drug re-testing procedures and the failure to follow instructions constituted just cause to terminate); *see also Menzel v. Western Auto Supply Co.*, 662 F.Supp. 731, 744-45 (D.P.R. 1987) (employer's motion for summary judgment was granted after the court found that the plaintiff's failure to follow supervisor's instructions, along with repeated violations of company policy, and repeated deficient performance constituted just cause for dismissal pursuant to Law 80). Therefore, even when examining

---

[2] At minimum Plaintiff's behavior was somewhat dishonest; as she knew that she had to report the arrest, the court proceedings, and the limited license and failed to report (1) the DUI arrest on December 28, 2014 (2) the judicial proceedings on February 13, 2014, April 29, 2014, as well as April 30, 2014, and (3) the provisional driver's license limiting use from 8:00 a.m. to 8:00 p.m.

10

the facts in the light most favorable to Plaintiff, the Court finds that GSK had good cause to terminate under Law 80.

## B. Consequences of Violating Policy Not Clear

Plaintiff further contends that the language of the policy states that a violation "may" lead to termination, as opposed to "will" lead to termination. Consequentially, Plaintiff's violations of the policy do not provide for automatic dismissal. Plaintiff additionally alleges that, due to the usage of "may," the potential consequences of her actions were not clear. While the term "may" might induce a slight ambiguity as to the final disciplinary action, it in no way causes such confusion that one would be unaware that termination is a potential outcome.

The fact that a policy provides that a violation "may" result in termination does not bar an employer from seeking termination when there is good cause. The Court is persuaded on other court's decisions that have found that the distinction between something that "will" versus "may" result in termination is not significant, particularly when the employer's response to violations are repetitive and consistent. *See Carreiro v. Stop & Shop Supermarket Co., LLC*, 2008 U.S. Dist. LEXIS 57959, at 4 n.2 (D.R.I. July 31, 2008). Other courts have found that the usage of "may" as opposed to "will" is merely a means to grant discretion to the actor. *See United States v. Watson*, 475 F.App'x 598, 599-600 (6th Cir. 2012) ("use of the word 'may' as opposed to 'will' for example, implies that the district court has discretion" as to either alternative. *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991)); *see also State v. Mena-Rivera*, 280 Neb. 948, 955, 791 N.W.2d 613, 620 (2010) ("'may' is used to connote a contingency or a possibility."). It is uncontested that Plaintiff received various trainings regarding the policy, while the

11

language of the policy did not indicate that automatic termination would procure as a result of violation, it quite clearly presented termination as a potential consequence. No more is required.

## C. Lack of Appropriate Analysis and Consideration Placed on the
### Determination to Terminate

Plaintiff next claims that GSK did not apply an appropriate level of analytical depth and consideration to their determination to terminate. Plaintiff explains that the decision to terminate was based primarily on one case in particular in which the company chose to terminate for the same violations. *See* Docket No. 48. However, Plaintiff does concede that there were other prior cases, which became known during discovery, in which employees were terminated for the same cause. *See* Docket No. 48, p. 12. Furthermore, GSK alleges, and Plaintiff does not contest (Docket No. 48 p. 12), that they have been consistent in applying the same disciplinary measures nationwide. *See* Docket No. 40, p. 13. In fact, nationwide, all employees who engaged in the same actions lost their employment.

Plaintiff reasons that, while GSK has consistently applied their disciplinary measures, their determination was based upon one case alone. The argument being that, for GSK to have applied an appropriate level of analysis and consideration, they would have had to consider all previous incidents in which an employee engaged in the same behavior. Plaintiff asserts that GSK's reliance upon one previous case indicates that their decision lacked analytical depth and consideration. *See* Docket No. 48; *see also* Docket No. 49, p.6

Plaintiff was terminated as a result of an internal investigation that found that there had been multiple company policy violations as to the DUI, the court proceedings on three `separate days, and the 45 day restricted license. As discussed above, such violations led to a firing for good cause under Law 80. GSK's decision to terminate was conducted adherent to applicable company policy, case law, and statutes. The outcomes of the prior cases where individuals engaged in identical behavior are uniform as to the termination of said employees. Such uniformity indicates that GSK is consistent in their application of disciplinary actions and apply the same level of analysis and consideration to each disciplinary measure to be taken. Had the prior cases resulted in differing outcomes and had GSK relied solely upon one unique case in their determination to terminate, then the Court would be inclined to agree with Plaintiff that there was a potential lack of analysis and consideration or at least potentially inconsistent analysis and consideration. However, this is not the case. The only evidence presented is that the previous cases, which resulted in identical disciplinary measures, were only identified in discovery and not at the time of dismissal. Alone, this is not more than a scintilla of evidence that GSK made a haphazard determination to terminate.

### D. GSK Created Culture in Which Driving While Intoxicated Was "Accepted"

Plaintiff alleges that the corporate culture of GSK was lax in relation to driving after the consumption of alcohol. Plaintiff and GSK acknowledge that GSK holds corporate events in which alcoholic beverages are served. Plaintiff additionally avers that various employees who attend such events consume alcohol and afterwards drive home in company cars while intoxicated. Plaintiff does demonstrate that there appears to be a corporate culture in the Puerto Rico branch of GSK that is lax towards the consumption

13

of alcohol while driving, including when an employee is driving a corporate vehicle. However, it is a stretch to say that this lax attitude extends to employees who would consume too much alcohol to drive legally.

As problematic as this lax attitude may be, it is not material to the case at hand. Plaintiff was not terminated as a result of her driving a car while intoxicated. Rather, Plaintiff was terminated for not adhering to company policy by failing to report the DUI arrest, the court proceedings, and the provisional license. Such behavior, as discussed above, has uniformly resulted in virtually identical disciplinary measures and constitutes good cause to terminate under Law 80. Plaintiff is not entitled to special treatment.

## V.    CONCLUSION

Due to Plaintiff's repeated violations, the clarity of potential consequences for violating the policy, and GSK providing a sufficient level of analysis and consideration in terminating Plaintiff, GSK had good cause to terminate pursuant to Law 80. As such, Plaintiff's claim of unjust dismissal fails. For all of the foregoing reasons, GSK's *Motion for Summary Judgment* is **GRANTED**. As Plaintiff voluntarily dismissed all the other causes of action, there are no further pending claims, and the case is hereby closed. Judgment to be entered forthwith.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of March, 2017.

*/S/ Daniel R. Domínguez*
DANIEL R. DOMÍNGUEZ
United States District Judge

14